# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff<br><br>v.<br><br>Michael David Thompson,<br><br>    Defendant | Case No.: 2:20-cr-00268-JAD-NJK<br><br>**Order re: Motions in Limine**<br><br>[ECF Nos. 39, 40, 41, 61] |

    Michael Thompson is charged with assaulting his wife, D.C., while the two were camping with D.C.'s grandchildren at the Lake Mead National Recreation Area. In anticipation of trial later this month, the government moves in limine to admit Thompson's prior felony conviction, his statements before and after the incident, and D.C.'s statements to two medical professionals. It also moves to exclude evidence of D.C.'s history of drug use, self-harm, and depression.

    I deny the government's motion to admit Thompson's prior felony conviction because the government has not yet demonstrated that Thompson's decade-old conviction bears on his character for truthfulness, and I reserve until trial the decision on whether to admit or exclude this prior conviction. I grant the government's motion to admit Thompson's statements because they are relevant to the government's theory of the case and are not hearsay. I also grant in part the government's motion to admit D.C.'s statements to her medical providers that she was struck but deny it as to her statements identifying Thompson as the party responsible for her injuries, and I reserve until trial a ruling on the admissibility of D.C.'s identifying statement. Finally, I grant in part the government's motion to limit discussion of D.C.'s drug use beyond the day of

the incident along with evidence of her depression, but I deny the request regarding her history of self-harm until the relevancy and scope of this issue can be fleshed out in the context of trial.

**Discussion**

**I.      Legal standard**

A motion in limine permits the court to rule on the admissibility of evidence or testimony in advance of trial.[1]  Though not explicitly authorized by the Federal Rules of Evidence, the practice of ruling in limine on evidentiary issues is based on the "district court's inherent authority to manage the course of trials."[2]  "However, in limine rulings are not binding on the trial judge, and the judge may always change [her] mind during the course of a trial."[3]  And denying a motion in limine does not guarantee that all evidence raised in the motion will be admissible at trial;[4] it "merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded."[5]

**II.     The government's motions in limine**

  **A.      Thompson's prior felony conviction [ECF No. 39]**

More than ten years ago, Thompson pled no contest to felony battery in Florida.[6]  The government seeks to admit that conviction under FRE 609, arguing that Thompson's conviction is close enough to the ten-year mark that its probative value remains high and his subsequent

---

[1] *United States v. Heller*, 551 F.3d 1108, 1111–12 (9th Cir. 2009); *see Ohler v. United States*, 529 U.S. 753, 754–55 (2000) (affirming the district court's decision to admit prior felony convictions in limine).

[2] *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).

[3] *Ohler*, 529 U.S. at 758 n.3 (emphasis omitted) (citing *Luce*, 469 U.S. at 41–42).

[4] *Tracey v. Am. Fam. Mut. Ins. Co.*, No. 2:09-CV-1257, 2010 WL 3724896, at *2 (D. Nev. Sept. 17, 2010) (citing *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004)).

[5] *Id.*

[6] ECF No. 39-1 at 1.

criminal history swings the factors in favor of admission. The government also clarifies that it seeks to introduce the conviction only if Thompson testifies that he's never "committed this type of crime before."[7] Thompson argues that the probative value of the conviction is low because it took place several years ago and battery does not impact his truthfulness as a witness.[8]

Federal Rule of Evidence 609 permits a party to impeach a witness's character for truthfulness through evidence of certain criminal convictions. But if more than ten years have passed since the witness was convicted of the crime or released from confinement, "the conviction is admissible only if: (1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use."[9] To balance a conviction's probative value with its prejudicial effect, the Ninth Circuit instructs courts to weigh five factors: "(1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness'[s] subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and, (5) the centrality of the defendant's credibility."[10]

The Ninth Circuit cautions against admitting older convictions under FRE 609 when the similarity of the crimes would allow the jury to impermissibly focus its attention on the prior conviction. In *United States v. Bagley*, for example, the court held that a defendant—who had not otherwise indicated that he would seek to falsely testify about his criminal history—would be

---

[7] ECF No. 39 at 4.
[8] ECF No. 50 at 4.
[9] Fed. R. Evid. 609(b).
[10] *United States v. Browne*, 829 F.2d 760, 762–63 (9th Cir. 1987) (citation omitted).

3

unduly prejudiced by introduction of a prior conviction for the same crime.[11] The *Bagley* court explained that when a "prior conviction is sufficiently similar to the crime charged, there is a substantial risk that all exculpatory evidence will be overwhelmed by a jury's fixation on the human tendency to draw a conclusion which is impermissible in law."[12] But later courts explained that while *Bagley* "counsel[s] against admissibility" in similar circumstances, a prior conviction "may be admissible in spite of its similarity to the offense at issue" when it "serves a proper impeachment purpose."[13]

It's unclear whether the facts and circumstances surrounding Thompson's conviction offer sufficient probative value to substantially outweigh its prejudicial impact, and whether the similarity of the convictions raise the specter of prejudice articulated in the *Bagley* decision. The government offers very little detail about the prior conviction, which is necessary to assess its admissibility. So, at this point, the government's argument teeters on the edge of propensity,[14] which the Federal Rules explicitly prohibit.[15] So I deny its motion to admit this evidence. This is not to say that the government will be unable to introduce evidence of Thompson's conviction for "a purpose other than to prove [his] character for untruthfulness"[16] at trial, like contradiction. And although Thompson argues that his conviction "should not be admitted . . . if he chooses to

---

[11] *United States v. Bagley*, 772 F.2d 482, 488 (9th Cir. 1985).

[12] *Id.*

[13] *Browne*, 829 F.2d at 763.

[14] *See* ECF No. 39 at 3–4.

[15] *See Bagley*, 772 F.2d at 488 (finding that when there is no "evidence that [the defendant] intended to . . . testify falsely as to his prior criminal record," evidence of a nearly identical conviction was potentially "devastating in its potential impact on a jury" because "there is a substantial risk that all exculpatory evidence will be overwhelmed by a jury's fixation on the human tendency to draw a conclusion which is impermissible in law . . .").

[16] Fed. R. Evid. 609 advisory committee's note to 2006 amendment (citing *United States v. Lopez*, 979 F.2d 1024 (5th Cir. 1992)).

4

testify,"[17] he has not moved to exclude this evidence, so I reserve ruling on its ultimate admissibility or exclusion until trial.

### B. Thompson's statements [ECF No. 41]

The government seeks to admit two of Thompson's statements to D.C. The first relates to the catalyst for the pair's argument and the second deals with Thompson's post-altercation threats. The government also moves to preclude Thompson from introducing his version of the story by eliciting it on cross-examination from the rangers who responded to the campsite. Thompson contends that the pre-altercation statements are needlessly prejudicial and the post-altercation threats are hearsay. As for his version of the story, Thompson primarily argues that he should be allowed to introduce it should he take the stand.

#### *1. Thompson's pre-altercation statement*

The government contends that, while at the campsite, Thompson made an inappropriate comment about D.C.'s granddaughter, which prompted D.C. to chastise Thompson.[18] According to the government, this interaction was the spark that ignited their dispute and, after D.C.'s comment, Thompson ordered her to get into their car where they continued to argue.[19] The government seeks to admit Thompson's remark about D.C.'s granddaughter to paint the picture of what happened in the car. Thompson objects, arguing that introduction of the comment is premature and unnecessary to prove that he assaulted D.C.[20]

Thompson's statement about D.C.'s granddaughter is relevant and does not violate FRE 402's prohibition on irrelevant evidence. The Federal Rules explain that "[e]vidence is relevant

---

[17] ECF No. 50 at 2.
[18] ECF No. 41 at 2.
[19] *Id.*
[20] ECF No. 48 at 2.

5

if . . . it has any tendency to make a fact" "of consequence" "more or less probable than it would be without the evidence."[21] The parties offer irreconcilable tales of how D.C. sustained her injuries. The government's theory is that the two began to argue after D.C. chided Thompson for his comment about her granddaughter. Thompson's theory is that D.C.'s wounds were self-inflicted and "related to her drug use."[22] So, Thompson's comment is relevant to the question of how D.C. became injured and would tend to support the government's theory because it makes it more likely that she did not injure herself.

To the extent that Thompson's objection is grounded in FRE 403, which permits a court to exclude relevant evidence when its probative value is substantially outweighed by its prejudicial effect, his argument fares no better. Generally, that rule "favors admissibility, while concomitantly providing the means of keeping distracting evidence out of the trial."[23] It is not enough to demonstrate that the evidence could be prejudicial; "[r]elevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, [that] permits exclusion of relevant matter under Rule 403."[24] Though Thompson mentions his concern that the statement could be prejudicial,[25] he has not demonstrated that the risk of prejudice substantially outweighs the statement's probative value. So I grant the government's motion as to Thompson's statement about D.C.'s granddaughter.

---

[21] Fed. R. Evid. 401.

[22] ECF No. 49 at 6.

[23] *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000).

[24] *Id.* (quoting *United States v. Mills*, 704 F.2d 1553, 1559 (11th Cir. 1983)).

[25] *See* ECF No. 48 at 2 ("[H]ere, without the context of trial, it is nearly impossible for the defense . . . to determine whether the alleged statement . . . should be excluded. At a minimum, a proffer would be advisable, to ensure that Mr. Thompson is not unduly prejudiced . . . .").

6

### 2.  *Thompson's statements to the rangers*

The day after D.C. sustained her injuries, two park rangers drove to Thompson's campsite to follow up about a report of an injured woman.  When they arrived, they spoke with Thompson, who claimed that D.C. had injured herself by hitting her head on the car window.  The government seeks to preclude Thompson from introducing his statements on cross-examination of the rangers as inadmissible hearsay under FRE 801.

Thompson largely agrees that FRE 801 prohibits him from introducing his own out-of-court statement through the officers on cross-examination to prove his version of events.  Instead, he argues that he's allowed to introduce his own statements if he takes the stand.  But Thompson's argument misses the mark because the government isn't seeking to preclude him from testifying about his own theory.  Because Thompson does not dispute that he is prohibited from introducing his statements through the rangers to prove that D.C. injured herself and that he did not hit her, I grant the government's motion.

### 3.  *Thompson's post-altercation threats*

The government also moves to admit the statements that Thompson made to D.C. the morning after the incident, in which he allegedly threatened her if she said that he had assaulted her and telling her to lie to the rangers.  Statements made by a party opponent are not hearsay, even if offered for the truth of the matter asserted.[26]  Thompson does not disagree with this basic tenant and argues only that these statements are inadmissible hearsay because they are not statements of a party opponent—they are D.C.'s statements to the rangers about what Thompson said to her.  But Thompson's objection misunderstands what the government seeks to introduce.  The government is not attempting to admit D.C.'s statements to the rangers, which would require

---

[26] Fed. R. Evid. 801(d)(2)(A).

both statements to be non-hearsay or fall under an exception; it moves to allow D.C. to testify about what Thompson said to her.[27] Because the government moves to admit Thompson's own statements against him, not D.C.'s, I grant the motion to admit Thompson's post-incident statements to D.C.

### C. D.C.'s statements to her medical-care providers [ECF No. 61]

After the rangers interviewed the pair, paramedic Kevin Maciha arrived to assess and treat D.C.'s injuries.[28] After examining her, Machia decided that D.C. needed additional treatment,[29] so she was taken to the hospital, where she saw Dr. William Harrington who questioned her about her injuries.[30] During both examinations, D.C. told the medical providers that Thompson had caused her injuries by hitting her.[31] The government moves to admit those statements, arguing that they fall under the statement-made-for-medical-diagnosis-or-treatment hearsay exception.[32] Thompson contends that because D.C. has a history of depression and self-harm, she lacked the capacity to "underst[and that] her statements were provided for purposes of medical diagnosis or treatment."[33]

Under FRE 803(4), a statement is not hearsay if it's "made for—and is reasonably pertinent to—medical diagnosis or treatment" and the statement "describes medial history[,] past or present symptoms or sensations[,] their inception[,] or their general cause." Generally, a

---

[27] *See* ECF No. 41 at 2.
[28] ECF No. 61 at 2.
[29] *Id.*
[30] *Id.*
[31] *Id.*
[32] *Id.* at 3.
[33] ECF No. 70 at 2.

8

"[s]tatement[] as to fault would not ordinarily qualify"[34] as one that is "reasonably pertinent to medical diagnosis or treatment," but courts have recognized that in some cases, statements that identify an abuser may be pertinent to future emotional treatment related to the abuse.[35] Although I am not persuaded by Thompson's capacity argument, I am not yet convinced that D.C.'s statements fall under the medical-diagnosis-or-treatment exception. D.C.'s statement that she was struck appears pertinent to treating her physical injuries, so I will admit the portion of the statement identifying that she sustained her injuries by being struck. But the government has not yet demonstrated that the portion of the statement identifying Thompson as the person striking her was necessary to treating her physical injuries. So I deny that portion of the government's motion and reserve for trial the ultimate admissibility of the statements regarding the identity of the person doing the striking.

### D. D.C.'s drug use and mental health [ECF No. 40]

Finally, the government moves to limit Thompson's cross-examination about D.C.'s drug use to the day of the incident and to preclude him from asking her about her history of depression and self-harm.[36] It argues that any questions about D.C.'s drug use outside of this timeframe are improper under FRE 403 and 608(b) because that line of questioning seeks only to prejudice and harass D.C. and attempts to improperly impeach her with specific instances of conduct. Thompson disagrees, arguing that D.C.'s history is necessary to assess her credibility and to impeach her testimony.

---

[34] Fed. R. Evid. 803 advisory committee's note to 1972 proposed rules.

[35] *See United States v. Hall*, 419 F.3d 980, 986 (9th Cir. 2005); *United States v. John*, 683 F. App'x. 589, 593–94 (9th Cir. 2017) (unpublished); Fed. R. Evid 803 advisory committee's note to 1972 proposed rules ("It also extends to statements as to causation, reasonably pertinent to the same purposes.").

[36] ECF No. 40 at 3–5.

9

### 1. *D.C.'s history of drug use is unduly prejudicial.*

The Ninth Circuit has cautioned against unnecessary probing into drug use because of the increased risk of "prejudice and hostility toward a witness."[37] As it explained in *United States v. Kizer*, "broad cross-examination on the issue of drug addiction to impeach witnesses" "may be necessary whe[n] [the defendant] seeks to impeach narcotics addicts who are paid government informers with criminal charges pending against them," those "who had criminal charges against them dropped prior to trial," "where the fact of addiction is probative of other motivation for testifying," or "where the witness is intoxicated while testifying."[38]

Thompson seeks to discredit D.C.'s ability to accurately recall the incident.[39] He may properly do so by asking D.C. about her drug use on the day of the incident or during her testimony, as the government concedes. At this juncture, Thompson has presented no evidence that indicates D.C. has a history of drug use that would implicate her ability to recall the incident. I thus find that the risk of prejudice to D.C. is unreasonably grave given the stigma of drug use and outweighs the probative value of asking her about using drugs in the years prior, especially because Thompson could impeach her credibility by asking about her drug use on the day of the incident.[40] So I grant the government's motion and limit discussion of D.C.'s drug use to any alleged use the day of the incident.

---

[37] *United States v. Domina*, 784 F.2d 1361, 1367 (9th Cir. 1986) (citation omitted).

[38] *United States v. Kizer*, 569 F.2d 504, 506 (9th Cir. 1978) (citations omitted).

[39] *See* ECF No. 49 at 2–5.

[40] *Hayes v. Ayers*, 632 F.3d 500, 518 (9th Cir. 2011) ("A defendant's right to cross-examine adverse witnesses is not unlimited, though. '[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" (alteration in original)).

### 2. *D.C.'s history of depression and self-harm*

The government moves broadly to exclude any questions about D.C.'s depression or self-harm under FRE 403 because "there is no evidence that [it] affected her ability to recall the events in question."[41] Thompson argues that he should be able to question D.C. about her depression "to the extent it appears that [it] manifested during the time frame alleged throughout these events."[42] Generally, a witness's "severe" mental illness that "dramatically impair[s] [her] ability to perceive and tell the truth" may be used to impeach that witness.[43] But because "[t]he days are long past when any mental illness was presumed to undermine a witness's competence to testify," courts have generally required "some indication . . . that a particular witness's medical history throws some doubt on [her] competence or credibility."[44]

Thompson has failed to show how a history of D.C.'s depression is relevant to her ability to credibly testify about the events, and there is no indication that he intends to present medical testimony for such a diagnosis, so I exclude any discussion of her alleged depression. But D.C.'s history of self-harm may be central to this case and has significant probative value because it tends to directly support Thompson's theory. So I deny the government's motion as to D.C.'s alleged history of self-harm.[45]

---

[41] ECF No. 40 at 3.

[42] ECF No. 49 at 7.

[43] *Gonzalez v. Wong*, 667 F.3d 965, 983 (9th Cir. 2011).

[44] *United States v. George*, 532 F.3d 933, 937 (D.C. Cir. 2008) (citation omitted).

[45] The government does not raise any character-evidence-based challenge to this line of questioning and instead centers its motion on FRE 403. *See* ECF No. 40 at 4.

**Conclusion**

IT IS THEREFORE ORDERED that the government's motion in limine to admit Thompson's prior felony conviction **[ECF No. 39] is DENIED**. The court reserves its decision on the admissibility of this conviction until trial.

IT IS FURTHER ORDERED that the government's motion in limine to admit Thompson's statements before and after the incident and to preclude Thompson from presenting his statements to the rangers on cross-examination **[ECF No. 41] is GRANTED**.

IT IS FURTHER ORDERED that the government's motion in limine to admit D.C.'s statements to her medical providers **[ECF No. 61] is GRANTED IN PART. D.C.'s statements that she was struck can come in.** The court reserves its decision on the admissibility of D.C.'s statements identifying the person striking her until trial.

IT IS FURTHER ORDERED that the government's motion in limine to exclude evidence about D.C.'s mental health, history of self-harm, and drug use **[ECF No. 40] is GRANTED IN PART**. **D.C.'s history of drug use and depression are excluded.**

_____
U.S. District Judge Jennifer A. Dorsey
May 10, 2021