# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| United States of America, | Case No.: 2:20-cr-00268-JAD-NJK |
| Plaintiff | |
| v. | **Order Granting in Part Motion in Limine re: Thompson's Testimony, Thompson's Expert, and D.C.'s Drug Use** |
| Michael David Thompson, | |
| Defendant | [ECF No. 88] |

Michael Thompson is charged with assaulting his wife, D.C., last year at the Lake Mead National Recreation Area. Last week, I granted in part the government's motion in limine to prevent Thompson from asking D.C. about her alleged history of drug use and depression on cross examination,[1] holding that Thompson may not cross examine D.C. about those topics because he hasn't demonstrated that it would be necessary to an assessment of her credibility as a witness.[2] Despite initially only seeking to discredit D.C.'s reliability as a witness, Thompson now argues that those topics are central to his theory that his wife's injuries were self-inflicted, and he seeks to discuss them should he take the stand at trial. According to Thompson, D.C. was, until recently, a heavy methamphetamine user and had begun suffering withdrawal symptoms during their journey West; the compounding stresses of the pair's situation, her depression, and her need for palliative care caused her to self-harm.[3]

Thompson now moves in limine to be permitted to present testimony in three ways. First, by testifying about his direct knowledge of D.C.'s drug use, that he is not a drug user, that

---

[1] ECF Nos. 39, 40, 41.
[2] ECF No. 77.
[3] ECF No. 88 at 3.

D.C. was in active withdrawal when she injured herself, and that she harmed herself while depressed. Second, by asking his expert about the effects of D.C.'s depression and drug use. And third, by asking D.C. on cross examination about her drug use to both impeach her theory of injury and to test her ability to testify at trial. At a hearing last Friday,[4] the government argued that testimony about D.C.'s drug use is overwhelmingly prejudicial under Federal Rule of Evidence 403.[5] It added at the hearing yesterday that, should evidence of D.C.'s meth use come in, the government should be permitted to introduce evidence that Thompson was using meth right along with her.

       Considering the government's sole objection, I grant Thompson's motion in part. I find that the government has not demonstrated a risk of prejudice that is sufficient to outweigh the probative value of Thompson's testimony about D.C.'s drug use, drug withdrawal, and self-harm because that testimony is the heart of Thompson's defense theory. I find that Thompson may ask D.C. on cross during the government's case-in-chief whether she used drugs on the day that she testifies at trial. And I find that Thompson's expert may offer testimony about the general causes of self-harm but may not opine about whether D.C. was suffering from symptoms of withdrawal. I deny Thompson's renewed request to impeach D.C. by asking her during that cross examination about her history of drug use because he still has not demonstrated that D.C.'s history of drug use impedes her ability to recall the altercation, and also for the reasons

---

[4] At the hearing, the parties disputed whether D.C. sought opiates from her treating physician at the hospital. Hr'g Tr. 34:1–18, May 14, 2021. But that issue was not raised in Thompson's motion and neither party seeks to admit or exclude that evidence, so I need not and do not consider it here. I did rule that the defense's expert witness may not testify about whether D.C.'s medical records suggest drug-seeking behavior.

[5] *See* Hr'g Tr. 31:4–33:2, May 14, 2021.

articulated in my earlier order granting the government's motion to exclude the drug-use evidence.[6]

## Discussion

A motion in limine permits the court to rule on the admissibility of evidence or testimony in advance of trial.[7] Though not explicitly authorized by the Federal Rules of Evidence, the practice of ruling in limine on evidentiary issues is based on the "district court's inherent authority to manage the course of trials."[8] "However, in limine rulings are not binding on the trial judge" who "may always change [her] mind during the course of a trial."[9]

### A. Thompson's direct examination

Thompson seeks to paint the full picture of his version of events by offering his account of D.C.'s depression, her history of self-harm, her methamphetamine use and withdrawal behavior, and his own history of drug use during his direct examination. The government only objects to testimony about D.C.'s alleged meth abuse, arguing that such evidence is an unduly prejudicial smear campaign and inadmissible under FRE 403. I start first with the unobjected-to portions of Thompson's motion and find that Thompson may testify about his account of D.C.'s self-harm and his observations of her depression. And I permit him to testify that, at the time of the incident, D.C. had been without meth for a period of time. But I do not permit Thompson to offer diagnosis of D.C.; he is limited to describing his personal observations of her mental health based on his own lay perceptions and experience.

---

[6] *See* ECF No. 77.

[7] *United States v. Heller*, 551 F.3d 1108, 1111–12 (9th Cir. 2009); *see Ohler v. United States*, 529 U.S. 753, 754–55 (9th Cir. 2000) (affirming the district court's decision to admit prior felony convictions in limine).

[8] *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).

[9] *Ohler*, 529 U.S. at 758 n.3 (emphasis omitted) (citing *Luce*, 469 U.S. at 41–42).

3

I next turn to whether Thompson may testify about his observations of D.C. using meth and find that the government has not demonstrated that the evidence's prejudicial effect substantially outweighs its very significant probative value here. FRE 403 permits courts to exclude otherwise relevant evidence when its probative value is substantially outweighed by its prejudicial effect. Generally, it's insufficient to show that the evidence could be prejudicial because "[r]elevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, [that] permits exclusion of relevant matter under Rule 403."[10] The government argues that mere mention of D.C.'s meth use fails the FRE 403 balancing test because Thompson lacks evidence to support his allegations and has no basis to understand what withdrawal looks like.

Thompson's testimony that D.C. used meth on and off throughout their marriage is the crux of his defense theory that a cavalcade of stressors caused D.C. to injure herself. While I recognize that this testimony may be prejudicial to D.C., evidence of her meth withdrawal is central to the theory of the defense and cannot be excluded without depriving the defendant of his opportunity to present a cogent story. The government can also mitigate any potential prejudice by cross examination of Thompson, as well as by introducing its theory that Thompson assaulted D.C. through her testimony, its other witnesses, and the evidence from the campsite. Thus, the risk of prejudice to D.C. does not tip the FRE 403 scale in favor of exclusion, and I grant the motion as to Thompson's perception of his wife's drug use on his direct examination only, should he choose to testify at his trial.

---

[10] *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000) (quoting *United States v. Mills*, 704 F.2d 1553, 1559 (11th Cir. 1983)).

I deny without prejudice the government's request to allow evidence of Thompson's drug use with D.C. because the government has not demonstrated an evidentiary basis to do so. I also grant Thompson's motion to testify that he is not a drug user. But should Thompson do so and open the door by affirmatively testifying that he is not a drug user, the government may re-urge its request to allow evidence of his drug use.

### B. Thompson's expert

Thompson also moves to allow his expert, nurse Ann Rovner, to testify that "depression, suicidal [ideation], and long-term drug use can be a factor" that contributes to "self-harm."[11] After a *Daubert* hearing yesterday, I held that Rovner may testify about the potential causes of self-harm generally, based on her education and experience as a critical-care and trauma nurse. But while Rovner may testify as to the general causes of self-harm, including drug withdrawal, Rovner may not tie that testimony to D.C.'s conduct or condition. I thus grant the motion in limine as to Thompson's expert in part; she may testify about the factors that can contribute to a person's decision to engage in self-harm generally, but she may not testify that D.C. was experiencing withdrawal on the date in question.

### C. Cross examination of D.C. during the government's case-in-chief

In my first in limine ruling in this case, I "limit[ed] discussion of D.C.'s drug use" on cross examination "to any alleged use the day of the incident" because Thompson had failed to demonstrate that her history of drug use would impede her ability to accurately recall the event.[12] I also explained that Thompson could impeach D.C. in other ways, including by asking her about her drug use on the day of the incident, and thus found that the heightened risk of prejudice

---

[11] ECF No. 88 at 5.
[12] ECF No. 77 at 10.

associated with drug use substantially outweighed the probative value.[13]  Thompson again argues, without evidence, "that his wife's long-term drug use does impact her ability to tell the truth [] and is suitable for impeachment."[14]

      While Thompson now presents his request in the broader picture of his story, he still has not demonstrated that D.C.'s history of drug use beyond the day of the incident has any probative impact on her ability to tell the truth as a witness.  So I deny his motion as to that line of questioning, but I take this opportunity to clarify my previous order in the context of Thompson's new arguments.  Thompson may not introduce evidence of D.C.'s past drug use—either on direct or on cross examination of her—for the purpose of impeaching her character for truthfulness.  He may only testify about what he witnessed D.C. do and may only ask D.C. on cross examination about her history of drug use if the government, on direct during its case-in-chief, opens the door for him to do so.

---

[13] *Id.*
[14] ECF No. 88 at 6.

## Conclusion

IT IS THEREFORE ORDERED that Thompson's motion in limine **[ECF No. 88]** is **GRANTED IN PART**.

- Thompson may testify about witnessing D.C.'s drug use and self-harm should he choose to testify.
- He may also ask D.C. about her drug use on the day of trial.
- Thompson's expert, Ann Rovner, may testify about the general causes of self-harm, including drug withdrawal, but may not testify that D.C. was undergoing symptoms of withdrawal, or that such symptoms caused her to harm herself in this case.
- Thompson may neither elicit testimony from D.C. on cross examination during the government's case-in-chief about her drug use unless the government opens the door, nor may he testify about her drug use to impeach her.

IT IS FURTHER ORDERED that the government's motion to introduce evidence of Thompson's methamphetamine use is **DENIED WITHOUT PREJUDICE** to its ability to re-urge that request should Thompson open the door.

_____
U.S. District Judge Jennifer A. Dorsey
May 18, 2021